Good morning. May it please the Court. My name is Todd Leventhal and I represent Samuel Davis. The first question for this Court, because it's been raised, is whether or not this Court's standard of review is de novo or plain error. And I suggested in my brief that it is de novo. The government suggested it's plain error because it was never raised before. However, if the procedural facts of this case come out, the Court will understand why it's de novo. On October 27th, Mr. Davis was sentenced. On October 28th The argument is that you didn't have an opportunity to object. That's correct. On October 28th, Newman case came out and it was sent back. Government filed a motion for reconsideration on November 9th. That same day, November 9th, Judge Mahan issued an amended order of forfeiture. So there was no chance or opportunity. And this Court has addressed this issue in Macinus Flores and stated that if a party does not have an opportunity to object to a ruling, the absence of an objection does not later prejudice that party. And allowed the Court to go ahead and issue the de novo standard of review. Well, why wouldn't – I mean, does this go to the question of where the money went and whether the Department of Justice is the same as the FBI and all? I'm on – I apologize, I can't.  But right now, I'm just – the question is how the standard of review is going to go. And then, yes, I am arguing that the Department of Justice and the FBI are part and parcel of the same. All right. Well, why wouldn't it make more sense then to say remanded and let you litigate that? Because all we've got right now is some, you know, judicial notice. We don't really have the facts. Regarding the issue of whether the Federal Bureau of Investigation is part and parcel of the Department of Justice? Yes. Well, I would ask that we do remand that and take those facts, just like they did in the Ruff case in the Eighth Circuit. That's exactly what they did. They remanded it.  is part and parcel of the Department of Justice. You're not asking us just to cite it on the current record here. You're just asking us to say you never got a chance to litigate it and you should get a chance to litigate it. Well, no. And I would – yes. I guess there was no chance to litigate whether or not this is a double dip, whether or not this is a – what my argument is, is whether or not the restitution order is a double dip for the government. That's my argument, and that's why I would ask that it be remanded based on that and the Ruff case. There is no case under the Ninth Circuit that has actually squarely come down on this, whether or not the government is double dipping, whether or not the restitution order and the forfeiture order is going to the same party. The closest we are is the right – Before we get to that, I'm curious. Which order gets credited? I'm sorry? Which order gets credited? Which order? Yeah. In other words, does the forfeiture amount get credited on the restitution or vice versa? What's your position? My position is this. And I've argued before this Court regarding the forfeiture, and I understand the Newman case came down. I've argued the Eighth Amendment. So at this point, what I'm asking for is that the restitution order be credited to the forfeiture order. So the forfeiture order would actually be decreased by the $100,000 that was ordered in. That's what we're asking for. Let me ask you a question. I'm somewhat confused about how we're getting to that point. I know the other circuits have talked about this double recovery, but we haven't, at least not in this specific case. We have Johnson, which I think helps direct us. But we're talking about they want to go to where the money ends up, whether it's in this government and therefore it's double recovery. But it seems to me they're arguing apples and oranges. Forfeiture and restitution are not the same. Restitution is to give me back the money you took for me. Where forfeiture is a fine, it's a government fine, that's going to go to the government. The problem we have, of course, here are the two government players, and that's where all this double recovery gets in. But I want to suggest to you that we're looking at it the wrong way, that the forfeiture and the restitution are two different things. They never become double. For example, you want credit for one to the other. But if there are apples and oranges, you can't make that credit. Now, as instead in Johnson, where our court spoke very eloquently about their very different purposes, there's no way to make them the same. And although this was not specific to your case, it looks like to me that in this case we've outlined the way this case, our case before, should be decided. That is, that they are completely different purposes for the monies and can't be one against the other period at all. So my question to you is, how does Johnson help or hurt you? Well, Johnson hurts. However, the Mandatory Victims Restitution Act, MRVA, helps. And that's what the Ruff Court looked at. Because what MRVA says is that double recovery, the amount paid to a victim under an order of restitution shall be reduced by any amount later recovered. And what they looked at, even though it's compensatory damages and it's a civil, what Ruff said was, that's a double dip. Because even see, if you get a restitution order under the court under Ruff, which is an Eighth Circuit case, what they said was they Is it Ruff 1, 2, or 3 you're referring to? Well, it'd be Ruff 1 prior to them sending it back. And what they said was why they sent it back to get additional evidence is to determine whether or not the D&E was part and parcel of the task force. Do you understand the problem? I do understand. And I've been grappling with this all night. I got it. But that's why I'm going to MRVA. Ruff is Eighth Circuit. Correct. And we don't follow Eighth Circuit if we have something different than Ninth Circuit. Well, that's what they looked at. Because of the double recovery, which is what I'm arguing here is that the government I understand they're the Eighth Circuit. But what I'm arguing here is even though we've got the Johnson case out there that $1.9 million forfeiture when money, as the Court mentioned at the prior case, never touched the money, never took control. Well, if the forfeiture amount did represent ill-gotten gains, then it would make sense, wouldn't it, that he should have to pay out of non-ill-gotten gains. In other words, he should have to both have restitution out of his own pocket and forfeit what he illicitly got. What's inconsistent about that? What's inconsistent about that is because generally we have a victim and we have the Department of Justice. The Department of Justice receives the forfeiture. The victim is there to be made whole. In this case, we have it all under one umbrella. We have the victim being what I would say is the Federal Bureau of Investigation, which is under the umbrella of the Department of Justice. That's why no case is squarely ---- But if the concept is that they should be paying the victim essentially out of their own pocket, not out of their bad money, then what difference does it make? On the one hand, they're giving up their bad money to the government, qua government. On the other hand, they're paying the victim, who happens to be the government, out of money that isn't infected with this, quote, bad money. And if I could articulate that and I see what the cases have come down is that's more of an offset. That's the Bright case that this Court decided. That's an offset. What attorneys were asking this Court was ---- I don't understand the offset. An offset. Say, okay, if I've got to pay you $100,000 in restitution, I would like an offset of my forfeiture. And that was the Bright case that this Court ruled on that said no. As a matter of fact, Judge Mahan sat on that case and said no. In this case, Judge Mahan saw a difference and said, this is the same victim, this is the same entity that's receiving forfeiture. All the money is flowing to the same entity, and therefore you can't double dip. He didn't say that. I thought the problem was that your problem is he didn't say that in the end. No. Well, that's that. No, he did say that. It wasn't until the Newman case came down and then the government filed an amendment. And then Judge Mahan said, well, if I'm forced to do it, I'm forced to do it, and issued the order the same day. I don't know what his thinking was. I don't know how much he got into Newman, but I saw it a little different. Let's suppose for a moment that we didn't ---- that the facts were what they ---- what the government says they are, that essentially that there are two different funds, one in the FBI and one in the Department of Justice, and that they don't ---- they're not mingled. Would that be a sufficient separation in your view? No. Because under 18 U.S.C. Section 531, the first sentence, the very first sentence under that section says the Federal Bureau of Investigation is in the Department of Justice. As a matter of fact, the Attorney General appoints, appoints the head of the Federal Bureau of Investigations under Section 532. I think they are part and parcel of the same ---- I mean, that's what ---- it's all spinach because the HHS and Department of Justice are both part of the United States government. Where do you draw the line? Do you draw the line? Well, under Ruff, you know, they both co-mingle. I guess they ---- it becomes difficult to determine that, and that's why we're here. No, that's the problem. They've gone the wrong direction, the other circuits. If you were referring earlier to Bright, but Bright clearly is not helpful to you. Judge Mahan may have sat on that case, but the Bright case says that the MRVA provisions above make clear that funds of the victims have not received, cannot be reduced or offset the amount of losses the defendant is required to pay. It just seems to me there's nothing in the Ninth Circuit that tells us specifically what to do here, but between that case and Johnson, we have to distinguish completely what our ideas are of source as distinguished from double dipping. And that's why, again, I'm going to try to articulate this. In Bright, it was an offset, and I see that different than a double recovery case. Bright, you had these nurses as victims, and then the money went to the Department of Justice, and what Bright was asking for was an offset because they had already recouped some of that money in a forfeiture, and he wanted an offset to go towards his restitution. That's not what I'm saying here. We have funds going to the same party, the victim and the Department of Justice. But to get there, don't you have to find or we have to conclude that forfeiture is, to use the words of the statute, compensatory damages? Compensatory, yes. Yeah. How do we do that? Compensatory damages seems to me a distinct concept from forfeiture, and I understand the theory and why you'd be upset about money going to the same victim, but to get back to the statute, what's your best argument that an order of forfeiture is, in fact, a compensatory damage order? Well, again, if you go back to MRVA, which is the Mandatory Victims' Right Act. Well, that's what I was quoting from. Exactly. The whole point of MRVA is that if you've received money, restitution money to make you whole, you cannot later, anything that you receive will be deducted by any future or prior civil case that you then are awarded because then there's a windfall. Because you're not made whole, you're made beyond whole. And that's what we're talking about here. Except that the statutory language does not specifically embrace criminal forfeiture. Correct. I understand. And that's exactly why the rough sort of rough case put it in there. I keep going back to that, because that's the only case that we have the same entity as a victim being the same entity under what I would consider the Department of Justice getting the forfeiture money and getting the restitution. Thank you. May it please the Court, counsel. I'm Daniel Hollingsworth. I represent the United States of America. I adopt the judge's arguments that they've already made. Forfeiture is mandatory. Didn't we just ask questions? Forfeiture is mandatory. They sound like arguments. Forfeiture is mandatory. Restitution is mandatory in this case. The purposes of forfeiture are different. Restitution is the restitution of a crime. In this case, the FBI operation fund. Forfeiture is punishment. It is not compensatory. Because of their differences, they do not have double recovery. Bright, Newman, Johnson, Bullware all support our position that the money that is going to go restitution to the FBI is completely separate and distinct from the money going to the Department of Justice asset forfeiture fund. I would point out, because of the Rule 35A motion, which only gives the court 14 days jurisdiction by which to make a determination and then loses jurisdiction under the Ninth Circuit case of McGuire, that I did have to ask the court to make judicial notice of the Department of Justice website that indicates there's more agencies than the Department of Justice in the DOJ asset forfeiture fund. And they include the United States Postal Inspection Service, the FDA, the United States Department of Agriculture, the Department of State, and the Defense Criminal Investigative Service. Those are all what, in the Department of Justice? They are not part of the Department of Justice, but they are in the Department of Justice asset forfeiture fund. So they are not identical.  forfeiture fund.      asset forfeiture fund. Sotomayor We agree that if we were to adopt the RUF position, that given the fact that this wasn't ever really litigated, it should be remanded, if we thought it mattered. Verrilli, Jr. Our first position is that because they're separate and distinct, there should not be any question. That it was never litigated. Verrilli, Jr. I did on the footnote ask the Court to take judicial notice of this public record. Kagan I understand that, but in fact there was no opportunity to litigate it for the reason you stated. So if we were to get beyond the question of if we were to say, yes, this matters, then why wouldn't we simply send it back to be litigated? Verrilli, Jr. Because we believe the Ninth Circuit can make a legal decision that, in fact, under the Newman, Johnson, Bright, you never get to the point that it's ever double recovery. Kagan I understand that. Verrilli, Jr. Newman, in fact, that was the premise of my question. But if we were to decide that you do get to the question of double recovery, then wouldn't we have to remand it? Verrilli, Jr. The reason why I would argue you don't need to remand it, Your Honor, is because this is a government document under the document. Kennedy I think she's saying if we get past that, then we'd have to remand it, because, you know, the defendant hasn't had an opportunity to litigate this thing. You've given a you've argued the asset fund is a common fund, but the defense has not had an opportunity to respond before the district court, right? Verrilli, Jr. Because of Rule 35A, the court had to make a decision. Kennedy I understand. Verrilli, Jr. I've filed over a dozen. I'm the attorney working below on the trials, and I've filed over a dozen 35A motions because of the decisions, and 19 of these decisions have been reversed where the court didn't enter the criminal forfeiture money judgment.  Verrilli, Jr. This is the first case we filed a Rule 35A because Newman came down then on the 28th, and we were able to get the 35A motion removed. Kennedy We understand the practical problems we've had in a lot of these cases and consider a lot of them. Verrilli, Jr. But Newman, Your Honor, flat out says that it is not a double recovery. Kagan Wait a minute. There's a footnote that says we're not just signing whether it's a double recovery. Verrilli, Jr. I'm sorry? Kagan Wait a minute. There's a footnote in Newman that says we're not just signing that. Verrilli, Jr. Although defendants must pay both restitution and criminal forfeiture, that result is not an impermissible double recovery. Footnote 7, and I'm quoting from the actual case. Kagan Wait a minute. There's a footnote that says, but we're not saying if they were both going to the same place, we're not just signing that. Verrilli, Jr. Right. Verrilli, Jr. A footnote 6 is what you're saying. Kagan Wait a minute. It doesn't do any good to stand up here and tell us something was decided that clearly they said wasn't decided. Verrilli, Jr. Well, then let's turn to Bright, because I also will argue in Bright that Bright goes, I believe, further than what it said that he argues. In fact, Davis argued that we put, apply the application to the forfeiture. What I need to point out is in Bright it goes and specifically says, and I think Judge Wall was quoted part of it, they flat out say even if you applied the restitution into the forfeiture or the forfeiture and the restitution, the person who pays the restitution would be subrogated and step into the shoes of the victim. So if the Department of Justice Asset Forfeiture Fund even paid under RUF II, paid the money, Bright is the only circuit in the nation I know that says we'd step in the shoes anyway, so there won't be a double recovery. Bright prevents, the Ninth Circuit when it issued the Bright decision makes sure that there's never a double recovery to the victim under the MVRA, the Mandatory Victim Restitution Act. I argue that judicially we should be able to achieve this at this level on strictly the legal laws, and you don't need to remand. The other point I would make is that your position as a practical matter that if all this is forfeited and no one can pay restitution and the United States essentially is depriving victims, including its own agency, of the money. Your Honor, this is a criminal forfeiture money judgment. About $3,100 got forfeited. No, no, I'm not talking about this case. I'm talking about as a matter of philosophy. If you will see in Newman, we do our – in Newman we mention in 18 U.S.C. 34 – I don't remember the statute – we say we always hunt down the money and apply it to the victim first, wherever we find money. And that, in fact, is a statutory – So why are you quarreling about this? Pardon me? Why are you quarreling about this? Quarreling about what? Well, look, I mean, you've got – first of all, you don't have any money to forfeit. There's nothing – this is all theoretical. We did forfeit about $3,100. That's the part that Judge Mahan first agreed because he said, oh, there's actually assets that you trace to. We'll forfeit that. There's no money. Right. And this only comes into play if you have sufficient funds so that they can do forfeiture and restitution above the amount of the proceeds, which is never going to happen in this case. So as a practical matter, it's all theoretical, right? It's the principle law. Who knows? Maybe we'll inherit – we do have a case in the Ninth Circuit – I can't remember right off what it is – where, in fact, the people did get a money judgment, and what happened is, is they won the lottery. We went in and grabbed the lottery money, and it came into this Court, and they said, yeah, it's the government. It's under the money of judgment. So although it's theoretical, it has happened. No, no. But in that case, you didn't have – as Judge Wallace has aptly put it, you have apples and oranges, and we're trying to decide if it goes the same place as just fruit. And my argument is it goes separately. They are separate under restitution and forfeiture. But you never actually get to the problem if there's no money paid. Well, both Locker v. Morris is an Eighth Circuit case, and there's another case – and I can't remember, I apologize – that basically says you don't have double recovery. And, in fact, it's in the brief. Double recovery never applies if you don't ever pay it. And in this case, Mr. Davis has not paid any money. He isn't – well, hopefully he may someday will find some. And so there can't be a double recovery under that factor either. That's the last – there's one other argument I would like to make real quickly, and I want to stress this because I think this is interesting. Under Davis's argument, what they're really telling us is we want you, the government, to be treated differently. Criminals don't commit crimes against private places. Just commit crimes against the government because you only get one. If you do it privately, well, then there's a forfeiture for individual and the government. But what was the restitution money for, for the FBI? It was the paid back, the undercover money that was lost in the conditions of the money laundering. I mean, nobody but the government is going to do that. It's a very strange kind of restitution. It is, you know, you're victimizing somebody who purposely went in there to get victimized in order to accomplish a criminal conviction, which is fine, but it was a governmental And in a way, you're making them pay for the fact that they generated a crime that otherwise wouldn't have existed. Mr. Davis and his co-defendant had laundered before. Well, I understand that, but this crime wouldn't have existed. He then committed laundering of excess of approximately $1.3 million. Of the government's phony money. They kept about $95,782 between the two of them. And you're looking for, and this gets back to my other problem, and you're looking for a restitution of the entire million plus even though. No, ma'am. We're looking for the restitution. I don't mean restitution. $95,000. A forfeiture of all of this money even though there were a total pass-through as to the rest of the money. Under Newman and Casey and every other circuit that's made a decision on this case, Your Honor, they have ruled it's the total amount of the money. And in this case, Congress spoke even further under 982A. Well, why don't you walk yourself into Eighth Amendment problems then? In some instances. I'm not saying this is what has been raised. But it's one thing to say, well, if you've got $95,000, you have to give up the $95,000. It's another thing to say if you were a little peon in a big criminal conspiracy or enterprise and you were paid 10 cents, you now owe a million dollars. Davis and Rice were the launderers. They weren't the little players. They were the launderers. They were the launderers, but they were laundering other people's money, not their own. Well, that's what launderers do. They frequently launder other people's money. That's what they do. They launder their own money. That's how they do it. He admitted to having laundered other people's money before he laundered the government's. In his admissions, in the excerpt of record, he admits that that's how he made his levy. It's both in the statements, it's in the PSR. He admitted that under oath. Even though he didn't do a plea agreement, there was a statement of facts and he adopted it. He laundered it. That's part of the problem with criminal activity is he laundered it. Historically, I mean, the statute is written on the basis of a historical understanding about what forfeiture was, it seems to me. And it was meant to mimic the civil forfeiture rules, but make them criminal. And ordinarily, my understanding is that this is different than Santos in those cases, that what you're supposed to be forfeiting is your ill-gotten gains. If you never gained it, I don't understand how you can forfeit it. Your Honor, under 18 U.S.C. section 982b2, Congress passed a law and said, if you launder more than $100,000 in a 12-month period with more than three launderings, you forfeit the entire amount. Be specific. He laundered 30 times in approximately a 12-month period just under $1.3 million. They said that by using the word proceeds, right? How else would they say it? Proceeds. 982 says obtained directly and indirectly. He obtained directly and indirectly the $1.3 million. 982 goes on to say if it's less than $100,000 with three or less and it's not in a 12-month period, then you only forfeit the commission. But as to the forfeiture, I turn to the 22 Santa Barbara. And 22 Santa Barbara is a Ninth Circuit case that says under the Eighth Amendment the entire amount of the illegal proceeds is forfeitable and the Eighth Amendment does not apply. It flat-out says proceeds of the crime can never be an Eighth Amendment violation. Okay. Now, I mean, I hate to get practical on you again, but if the Department of Justice always pays off the victims, as you say, and becomes segregated to their position in the restitution, what's the problem? I mean, the Department is getting all the money anyway. Again, I mean, is it anything beyond theoretical? Again, we actually have, and I don't have my reports here. I can tell you my reports year by year. We have collected money judgments from time to time, Your Honor. Well, sure. And we have collected in one year it was 3.7 million, another this. It isn't just practical. In a way, you do say it's theoretical, but there's always the possibility that we will find his assets. Mr. Davis in the PSR refused to give any of that information. If we're able to ever find any of his assets where they are, we can pursue and collect them.  But there's a subset. Let's take this case. Sorry. So let's take this case and assume he has some assets that are forfeited. And according to the Department of Justice policy, you just told me you provide those to the victim, right? Yes. And it's your position you're segregated to that. Under Bright. Right. Under Bright, which is not. Right. So you're segregated. So you still have all the right to get the money as a forfeiture, either that or as a segregated to the restitution position. We do as long as this Court says it's not a double recovery. And our argument is under Bright it isn't a double recovery. If this Court says it's a double recovery, then they can wipe out. And this is the interesting. Double recovery doesn't apply to the criminal forfeiture. It applies to the restitution. And Davis makes a confusion on that. The most this Court could do under if this Court says there's a double recovery, which I don't believe it can be legally, it would wipe out the restitution, period. For the victims. For the victims. For the victims. It would not. Well, no, it wouldn't. Because at least under your policy, you take the forfeited funds, you reimburse the victims, and then you say we're segregated their position and we collect the money judgment from there, right? Yes, sir. Okay. As long as there's no double recovery, yes, sir. Now, I think we've exhausted probably your arguments. Thank you, Your Honor. And two minutes rebuttal, and then we'll take a break. I want to just briefly go back, because I know there was some discussion about the Eighth Amendment, and we kind of got off of the amount, and I want to bring it back to what my argument here is, and it's pretty straightforward. It has to do with double recovery, and whether or not the victim and the DOJ are part and parcel, the FBI and the DOJ are part and parcel the same, and where the money's going.  Newman, the victim, was a bank. They robbed a bank. That was the victim. We had a different victim than the Department of Justice. In Bright, we had the nurses. The nurses were the victim. We had a different victim than the Department of Justice. Here we have the FBI, and clearly 18 U.S.C. 531, first sentence, says the Federal Bureau of Investigation is under the Department of Justice. They're part and parcel the same. They're the victim. They're also the recovery. To suggest that if this doesn't happen, that we're going to wipe out restitution, I think is screaming, the sky is falling. That's not what's going to happen, because by the government's own terms, they pay the restitution back at some point first, according to them, before anything else happens. And I just want to talk about theoretically. There's nothing theoretical, because after Mr. Davis does his time, he gets out. He's got this burden hanging over his head. Either way. What's that? Either way. He's away? Either way. Well, I mean, they can garnish. They can go after him in their own way. They can chip away at him. You know, he's going to have this burden for the rest of his life. It's not something he gets a job, they can go after him. You know, it's not something where he just goes out and he's got to win the lottery in order to pay it back. This is not theoretical. This is very serious to Mr. Davis. When he gets back and he tries to get back into recovery or wherever he's going to go in life, this is going to be hanging over his head. So I would just ask that. Well, at the end of the day, don't we just have to look at the statute and determine whether the federal criminal forfeiture proceeding is equivalent to compensatory damages in a civil proceeding? That's what the statute says. Yes. It's hard to make that leap. Your argument is the structure of the statute supports your argument. Correct. And you can analyze it the way you want to. Isn't that where we end up at the end of the day? Very good. Okay. Thank you. Thanks. We'll take a ten-minute recess.
judges: Wallace, Thomas, Berzon